Eugene THOMAS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 23700.

United States Court of Appeals
Fifth Circuit.

April 27, 1967.

Fred Blanton, Arthur J. Hanes, Birmingham, Ala., for appellant.

R. Macey Taylor, Asst. U. S. Atty., Birmingham, Ala., Theodore George Gilinsky, Atty., Dept. of Justice, Washington, D. C., Macon L. Weaver, U. S. Atty., Birmingham, Ala., for appellee.

Before COLEMAN and DYER, Circuit Judges, and ESTES, District Judge.

COLEMAN, Circuit Judge:

The appellant was convicted of a violation of Section 5811, Title 26 U.S.C.[1] The sentence was to two years imprisonment, to run consecutively to the ten year sentence imposed in No. 23,289, this day affirmed.

The sawed off shotgun was produced as the result of a search of appellant's home. The District Court denied a timely motion to suppress this evidence. The appellant says that the search warrant was invalid and the search was unreasonable. This is the sole issue on this appeal. The judgment of conviction will be reversed.

Our duty in regard to the validity of the affidavit for this search warrant was quite completely spelled out in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

---

1. The indictment charged:
"On or about the 26th day of March, 1965, at or near Bessemer, within the Southern Division of the Northern District of Alabama, the defendant
EUGENE THOMAS
whose name is otherwise unknown to the Grand Jury did unlawfully and knowingly possess a firearm, to-wit: a Newport model CN double barrel shotgun, Serial No. T 70594, having a barrel length of 12½ inches upon which said firearm the taxes imposed by Title 26, Section 5811, United States Code, had not been paid."

The general duty was described as follows:

"This Court is alert to invalidate unconstitutional searches and seizures whether with or without warrant. See Aguilar v. [State of] Texas, supra; Stanford v. Texas, 379 U.S. 476 [85 S.Ct. 506, 13 L.Ed.2d 431]; Preston v. United States, 376 U.S. 364 [84 S.Ct. 881, 11 L.Ed.2d 777]; Beck v. Ohio, 379 U.S. 89 [85 S.Ct. 223, 13 L.Ed.2d 142]. By doing so, it vindicates individual liberties and strengthens the administration of justice by promoting respect for law and order.

"This Court is equally concerned to uphold the actions of law enforcement officers consistently following the proper constitutional course. This is no less important to the administration of justice than the invalidation of convictions because of disregard of individual rights or official overreaching. * * *

"[A]ffidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See Aguilar v. [State of] Texas, supra. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States, supra, [362 U.S.] at 270, [80 S.Ct. 725, 4 L.Ed.2d at 707, 78 A.L.R. 2d 233]. * * *

"The affidavit in this case [Ventresca], if read in a commonsense way rather than technically, shows ample facts to establish probable cause and allow the Commissioner to issue the search warrant."

Omitting formal parts, the affidavit for the search warrant, sworn to by a special agent of the Federal Bureau of Investigation before a United States Commissioner, read as follows:

"The undersigned being duly sworn deposes and says: That he has reason to believe that on the premises known as the residence of Eugene Thomas, located at 1519—12th Avenue North, Bessemer, Alabama, and any automobile in the possession of Eugene Thomas in the Northern District of Alabama there is now being concealed certain property, namely guns, rifles, pistols, ammunition and various and sundry weapons which are believed to have been used in the shooting of Viola Luizzo on or about March 25, 1965 in the County of Lowndes, State of Alabama.

"And the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: a confidential source upon which affiant has relied on in the past and has found to be reliable, advised affiant that a vehicle operated by Eugene

Thomas was observed proceeding to the scene where Viola Luizzo was shot at the time of said shooting. The confidential source further advised the affiant that he heard shots and based upon his observation and belief, believes that the aforesaid vehicle was the vehicle from which said shots were fired."

At the outset we encounter Rule 41 (b) (2) and (c) as follows:

"(b) Grounds for Issuance. A warrant may be issued under this rule to search for and seize any property * * (2) Designed or intended for use or which is or has been used as the means of committing a criminal offense; * * *

"(c) Issuance and Contents. A warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant * * * (and) he shall issue a warrant identifying the property * * *"

In its written brief filed pursuant to a post argument inquiry propounded by the Court, the Government has answered as follows:

"We are persuaded that Rule 41 (b) (2) is directed to federal criminal offenses, i. e., that it authorizes search warrants for property believed to have been used or which is to be used as a means of committing a federal crime. See Conyer v. United States, 80 F.2d 292, 294 (C.A. 6) (dictum); United States v. Fulcher, 229 F.Supp. 456, 457 (D.Md.) (dictum); United States v. Office No. 508 Ricou-Brewster Bldg., 119 F.Supp. 24, 28 (W.D.La.) (by implication); Whitman, Federal Criminal Procedure 321 (1950). The history of Rule 41(b) shows that it was intended merely as a codification of existing law. See Notes of the Advisory Committee. The federal law relating to search warrants at the time consisted of 18 U.S.C. (1940 Ed.) § 611–626, which in turn were simply the provisions of Title XI of the Espionage Act of 1917, 40 Stat. 228, removed from the somewhat anomalous place which they had occupied as part of that statute, and re-enacted as separate sections in Title 18. Nothing in the legislative history of the Espionage Act indicates that Title XI was designed to bestow power upon United States judges and commissioners to issue search warrants for the instrumentalities of purely state crimes; such history as there is tends to the contrary, e. g., 55 Cong.Rec. 2066."

The Government further contends, however, that "Realistically read, the affidavit alleged sufficient facts to enable a commissioner to find a federal offense and thus issue a search warrant. In these circumstances the affidavit fully satisfied the requirements of the Rule. All elements to prove guilt in a criminal case are not required to show probable cause for a search."

It is further contended, "The affidavit recites that Viola Luizzo was shot. This was a statement of hard fact. As of the time the application for the warrant was made, the name Viola Luizzo carried connotations well beyond those of any allegation of the killing of an unknown person. As of March 26, 1965, the shooting of Mrs. Luizzo in connection with the march on Selma was a notorious fact throughout the United States. The mere mention of the name thus spelled out, albeit in shorthand form, a whole concept". * * * "Here are recited (1) the shooting (2) in Lowndes County (3) the victim, Mrs. Viola Luizzo (4) appellant was observed operating a vehicle proceeding to the scene, and (5) that based on the informant's observation the shots were believed to have come from the vehicle. Clearly, law enforcement required that the weapon used be seized as soon as possible and since it is so easily and quickly transported a search of appellant's vehicle and residence were unmistakably required with sufficient speed to forestall either further crime or elimination of the evidence. Under these circumstances, which required a speedy warrant, we suggest that commissioner properly found from this affidavit

sufficient probable cause to support the warrant".

Applying the presumption in favor of the warrant prescribed in *Ventresca*, supra, we cannot agree that this affidavit sufficiently alleged the commission of a federal offense. Nor can it be saved by what the commissioner may have personally known or "took judicial notice of" at the time the warrant issued. It is not necessary for this Court to pass on what a commissioner may do in the light of his own knowledge, nor do we intimate any opinion as to what judicial notice he is lawfully authorized to take in the issuance of a search warrant. The record before us refers to neither of these items. We can draw no inferences, even if otherwise permissible, from a silent record.

Conceding that the affidavit for the warrant may have been written by a layman, the only crime it charges, if any, is that an individual had been shot in Lowndes County, Alabama. This does not begin to describe a federal crime.

From a judicial notice of our own records this Court knows that before this affidavit was made the informer in the case had fully apprised the Federal Bureau of Investigation of all the facts detailed in our opinion in Wilkins, Jr. v. United States, 5 Cir. 376 F.2d 552. Appellant had been arrested before the search was undertaken.

This affidavit did not describe a federal crime in inept or inartful words. It made no attempt to state the only federal crime for which there was probable cause to believe had been committed, that is conspiring against citizens for exercising rights secured by the Constitution and laws of the United States.

Under these circumstances, if we were to sustain the validity of the affidavit, the warrant, and the search, we would simply nullify Rule 41, Fed.R.Cr.P.

Although, the affidavit fails to allege that the shooting was either unlawful or felonious, we need give no consideration to whether it sufficiently described a crime against the laws of the State of Alabama. It was necessary that the affidavit allege with at least some reasonableness that an offense against the laws of the United States had been committed. This, on the record before us, it wholly failed to do.

Therefore, the search warrant issued pursuant to this affidavit was invalid, and the search was unreasonable. The motion to suppress the fruits of the search should have been granted. This being the focal point of the case, we do not consider it necessary to discuss the other points raised by the appellant.

We do say, however, that the admission of the chain and the bull whip found with the gun was obviously highly prejudicial to this appellant and had no probative value in this prosecution. The charge was that the defendant possessed the sawed off shotgun, not that he possessed other articles not within themselves unlawful but nevertheless the objects of universal hatred and scorn. This error alone would have necessitated that this conviction be reversed and remanded for another trial.

However, for the reasons above stated, the conviction is

Reversed.