**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Kent "Frenchy" BROUILLETTE and Joan Lee Clemens, a/k/a Joan Shipp,**
**Defendants-Appellants.**

**No. 72–2456.**

United States Court of Appeals,
Fifth Circuit.

May 15, 1973.

Hilary J. Gaudin, George M. Leppert, New Orleans, La., for defendants-appellants.

Gerald J. Gallinghouse, U. S. Atty., Mary Cazalas, Robert L. Livingston, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before COLEMAN, MORGAN and RONEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellants "Frenchy" Brouillette and Joan Clemens were convicted of violating 18 U.S.C. § 1952. This section prohibits the use of interstate commerce in promoting, establishing or managing an unlawful activity. In this appeal, Brouillette and Clemens challenge the validity of a search warrant under which certain items, later admitted into evidence against them, were seized.

After careful consideration of their claim, we are compelled to agree and must remand this case to the district court for a new trial.

## The Factual Setting

Mr. Brouillette and Ms. Clemens are allegedly the "managing partners" of a prostitution ring headquartered in Metairie, Louisiana. While it seems virtually admitted that they indeed operate in the "world's oldest profession", the question in this federal prosecution centers on the commission of a federal, rather than a state, offense. To bring the appellants within the grasp of federal authorities, the government alleges that they have caused, or perhaps more accurately aided and abetted, one of their "girls" to "attend" a convention in New York City and there to ply her trade.

In the process of preparing its case, the government sought and obtained a search warrant for Apartment 224 at the Imperial House Motor Hotel in Metairie, Louisiana. This location was the alleged nerve center of the prostitution ring's operations. A search warrant for the above address was signed on April 8, 1971. The federal agents duly executed this warrant on April 12, 1971, and seized a number of items allegedly used in furtherance of the prostitution activities. These items included various address books and files, bankbooks, pictures, and documents. Many of these items were introduced against appellants at trial.

## The Legal Issue

The crux of this appeal comes down to a single, concise legal issue: In obtaining a search warrant, must federal officers present evidence ample to establish probable cause that a *federal crime* has been committed. In the instant case, the agent of the Federal Bureau of Investigation who obtained the warrant and gave the supporting affidavit never presented any evidence whatsoever to

support the bald assertion that these appellants had violated the federal law.

The complete text of the affidavit is set out in the margin.[1]

1. AFFIDAVIT FOR SEARCH
WARRANT
UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF LOUISIANA
Commissioner's Docket No. J1,
Case No. 134
UNITED STATES OF AMERICA
versus
Apartment 224, Imperial House Motor Hotel, 3400 North Causeway Boulevard, Metairie, Louisiana

BEFORE Ingard O. Johannesen, New Orleans, Louisiana

The undersigned being duly sworn deposes and says:

That he has reason to believe [footnote omitted] that on the premises known as Apt. 224, Imperial House Motor Hotel, 3400 North Causeway Blvd., Metairie, Louisiana, which is a three-story red brick and green concrete building with large white letters "Imperial House" on the red brick portion of the building, and address 3400 on front glass door. Apt. 224, which is on the second floor, is designated with a Blue plaque with indented white numbers in the Eastern District of Louisiana, 224 [sic]. Apt. 224 is leased under the name Kent Tank who thru photos has been identified as Kent Brouillette, there is now being concealed certain property, namely

1. Address books with names, addresses and telephone numbers of persons associating with Brouillette in prostitution activities.
2. Convention books containing pictures and names of persons to whom Brouillette has furnished girls at conventions.
3. Records reflecting bank accounts and other financial dealings relative to prostitution activities.
4. Rotary Type Cardex filing system containing names and places of persons used and engaging in prostitution activities.

which have been used by Brouillette to promote and conduct prostitution activities through interstate travel in violation of Title 18 U.S.C. § 1952.

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

1. Ray J. van Merrienboer, Jefferson Parish Sheriff's Office, Vice Squad, was advised by a reliable source who, on five separate occasions has furnished reliable information which was verified through independent investigation by van Merrienboer, that source has seen address books and convention books in Brouillette's apartment. Source has further advised that he has observed Brouillette place these books in a suitcase which Brouillette has then placed somewhere in the the apartment when the heat is on. Source has further observed Brouillette put these books in a suitcase and place in the trunk of Brouillette's car when the heat is on.

2. A reliable source, who on six separate occasions has furnished information which through independent investigation has proven to be reliable and true, advised SA Robert W. Crewdson that Brouillette displayed a red address book which Brouillette explained contained names, addresses, and telephone numbers of persons who associate with Brouillette in promoting prostitution activities.

3. A reliable source, who has furnished information in the past which, through independent investigation by SA Robert W. Crewdson has proven to be true, has observed records reflecting bank accounts in Brouillette's apartment.

4. Walter Floyd, Jefferson Parish Sheriff's Office, Vice Squad, has been advised by three separate sources, each of whom has furnished information in the past which has proven to be true and correct, through his independent investigation, that Brouillette has a Rotary Type Cardex System on which he keeps many of his contacts for promotion of prostitution activities.

5. FBI identification record for Kent Brouillette shows eight arrests for pandering, maintaining a house of prostitution, conspiracy to commit prostitution, keeping a disorderly place and related charges from June 19, 1964, thru April 7, 1970. Identification made thru fingerprint classification. Arrests were made under the name Kent B. Brouillette and aliases, Kent Brouillette, Kent Brabaney Brouillette, and Kent Barnaby Brouillette.

6. SA Crewdson showed five arrest photographs of white males to Santo J. Calamia who identified himself as the Manager for the Imperial House Motor Hotel, 3400 North Causeway Boulevard, Metairie, La. Calamia identified a Jefferson Parish Sheriff's Office photograph 36328 of Kent

■■ Thus, in this case, we have a federal warrant which includes a statement from the agent that a federal offense is violated. The supporting assertions of "reliable information" never mention any reason for believing that this prostitution operation had come within the scope of federal prohibition. At the most, the affidavit established probable cause to support a finding that appellants were operating a prostitution ring in violation of Louisiana state law. The "reliable information" was addressed solely to the fact that this address was connected with prostitution activities and that various items would probably be found therein. The government concedes that there is no specific statement in the affidavit which establishes that interstate transportation or facilities were used in the furtherance of the criminal prostitution activity. That is, of course, a necessary element of the federal criminal offense.

■ One of the prerequisites for issuing a search warrant is the requirement that "probable cause" be established by factual information given a neutral and detached magistrate. The precise question involved in this case is whether the facts supporting probable cause to find the commission of a crime must, when a warrant is being sought by federal agents and alleging a federal crime, give facts sufficient for the magistrate to find that in all probability a federal violation was involved.

Appellants rely heavily on this court's decision in Thomas v. United States, 5 Cir. 1969, 376 F.2d 564. While that case is very strong for their position in some respects, it is distinguishable in at least one discernible way.

The basis for the issuance of any federal search warrant is Rule 41 of the Federal Rules of Criminal Procedure. The relevant provisions of Rule 41 set out the basic criteria:

(b) Grounds for Issuance. A warrant may be issued under this rule to search for and seize any property

. . .

(2) Designed or intended for use or which is or has been used as the means of committing a criminal offense; . . .

(c) Issuance and Contents. A warrant shall issue only on affidavits sworn to before the judge or commissioner and establishing the grounds for issuing the warrant . . .

As the court noted in the Thomas case, the government has conceded that Rule 41(b)(2) "is directed to federal criminal offenses, i. e., that it authorizes search warrants for property believed to have been used or which is to be used as a means of committing a federal crime." 376 F.2d at 566.

The Thomas case grew out of the prosecution of defendant Thomas for possession of an illegal firearm in violation of federal law. In obtaining a search warrant for Thomas' home, the F.B.I. agents did not ever allege the commission of a federal offense. They did allege that Thomas had been in-

---

Brouillette, alias Frenchy, as being the person who occupies Apartment 224 at the Imperial House under the alias Kent Tank.

Walter Floyd, Jefferson Parish Sheriff's Office, answered a complaint at Apartment 224 at the Imperial House. The calling complainant was Joan Clemens. Floyd recognized the occupants of Apartment 224 as being a white male be recognized as Kent "Frenchy" Brouillette, and a white female he recognized as Joan Lee Clemens who has herself been arrested six times since October 20, 1967, for prostitution and related charges.

On this occasion, Clemens tore up a piece of paper which she told Floyd was a marriage certificate for her and Frenchy.

    IOJ
    RWC
    4/8/71
/s/ ROBERT W. CREWDSON,
    Signature of Affiant.
    Special Agent, FBI
    Official Title, if any.
    April 8, 1971

Sworn to before me, and subscribed in my presence,
/s/ INGARD O. JOHANNESEN,
    United States Commissioner.

volved in the murder of one Viola Luizzo and that the weapons used in the crime were felt to be concealed in the place to be searched.

In holding that the evidence given to the magistrate in the *Thomas* case was not sufficient to establish "probable cause", this court pointed out that that affidavit did not begin to describe a federal crime. All that was described by the affidavit was the shooting of an individual by another named individual. While such a murder would clearly be a state crime, it is not a federal crime standing alone. The federal crime involved was, of course, as pointed out by the court, the deprivation of Mrs. Luizzo's civil rights. However, this federal crime was never stated by the agents. "It was necessary that the affidavit allege with at least some reasonableness that an offense against the laws of the United States had been committed." *Id* at 567.

■ As previously mentioned, while we feel that this case is somewhat similar to *Thomas*, there is a ready distinction. In the instant case the federal agents did state the precise federal section which they believed was being violated by these appellants. The affidavit clearly shows that the agents stated that they were investigating a violation of 18 U.S.C. § 1952, involving the use of interstate facilities in furtherance of criminal activities. The deficiency in the warrant is the failure in any respect to show underlying facts which tend to establish a connection with the use of interstate facilities. This is, of course, a jurisdictional prerequisite for the federal offense; merely showing prostitution activities is insufficient. In *Thomas* there was never any mention of what federal section was being violated, although the court, taking note of the widespread publicity in the Luizzo case, had no difficulty in ascertaining what federal crime the agents could have charged.

■■ We do not feel that this distinction is significant in light of the underlying rationale of the *Thomas* case. Basically, the notion underlying *Thomas* and, in fact, underlying any federal search warrant case, is that federal agents are charged with the investigation of federal, as distinct from state, crimes. In granting a search warrant to a federal agent, we feel there must be some showing that a federal crime has been or is being committed. To establish the probability of a crime under 18 U.S.C. § 1952, it seems necessary to present facts concerning both the state law being violated and the manner in which interstate commerce is involved in the violation.

■ It can clearly not be enough merely to state the section which allegedly has been violated. The standard rule is that in determining whether probable cause exists for issuance of a search warrant it is not necessary to determine whether or not the offense has actually been committed but it is necessary to determine whether the affiant has reasonable grounds, at the time of making the affidavit and the issuance of the warrant, for believing that "the offense charged" was being or had been committed. Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032 (1925); Lowrey v. United States, 8 Cir. 1947, 161 F.2d 30, 35. The "offense charged" in this case is the use of the facilities of interstate commerce in furtherance of a violation of the law of a state. The warrant in question and the affidavit supporting it give no factual support sufficient to justify any belief that interstate commerce has been used for such a violation. In short, the magistrate in this case had absolutely no basis on which to place a finding that the instrumentalities of interstate commerce were being used contrary to federal law. Yet that is what must be established in order to justify a warrant under these circumstances. Otherwise, federal agents would be able, by merely mentioning a statute involving interstate commerce, to search what would otherwise be establishments violating only local state law, possibly in the hopes of

finding evidence which would support a federal violation. We do not feel that this is a proper course of conduct. Federal agents are not to go around looking for state violations and then try to turn them into federal violations.

It is not onerous to require federal officers to state their reasons for believing that a federal crime has been committed in obtaining a warrant. After all, under the system of federalism, there is room for dual state-federal activity. Federal officials often refer information they have received to state officials for possible prosecution. If there is a federal crime involved, stating the facts giving rise to the suspicions is not an undue hardship.[2]

In United States v. Birrell, 242 F. Supp. 191 (S.D.N.Y.1965), federal agents sought and obtained a search warrant for certain property on the basis of an affidavit quite similar to the one here in question. The affidavit merely recited that the agent had reason to believe that certain records were being concealed at the premises to be searched, which records "have been used in committing a violation of Title 18, United States Code, Section 1341." The section involved is the basic mail fraud section. The court held the warrant plainly insufficient on its face because there was not a single fact stated in the affidavit tending to show that defendant Birrell used the mails in a scheme to defraud. Use of the mails was, of course, a necessary element in determining that there existed probable cause that fraud by mail had been committed.

As the Supreme Court stated in United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965):

Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber-stamp for the police.

The magistrate in this case could have found no probable cause to believe that a federal offense had been committed on the basis of the facts supplied in the affidavit of the F.B.I. agent here.

It is well recognized that the probable cause necessary to justify a search warrant is coextensive with the probable cause required to justify an arrest warrant. Giordenello v. United States, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); 3 Wright, Federal Practice and Procedure § 662 (1969). It is certainly clear that on the basis of the affidavit given by this agent no federal arrest warrant for commission of a crime in violation of 18 U.S.C. § 1952 could have been obtained. There are simply no facts here which tend to show the use of interstate commerce in the manner sought to be proscribed by section 1952. Federal arrest warrants do not issue without evidence tending to show a federal offense.

The government apparently recognizes the validity of the above position for it does not press strongly for a rule that federal agents can search where the only probable cause shown goes to the commission of a purely state offense. Instead, the government suggests that ample connection with interstate commerce can be derived from within the four corners of the warrant. In attempting to justify this position, the government relies heavily on the fact that, first, the agent mentions that the area to be searched is a motel and, secondly, that among the items to be sought by the warrant are "convention books".

The government takes the position, apparently, that Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), can be applied to the facts of this case so as to find the mere mention of the involvement of a motel in the

---

2. In all probability, the federal agents had enough evidence to justify the warrant but failed to present it to the magistrate.

The warrant and affidavit, however, must stand or fall on the facts within them.

prostitution activities is sufficient to supply the "interstate" aspect required by section 1952. We reject this argument. First, we do not feel that the same test used for interstate commerce under the Civil Rights Act must necessarily be applied to a federal criminal statute involving the use of interstate commerce.[3] Furthermore, we are convinced that Congress, by passing 18 U.S.C. § 1952, did not intend to make every conceivable crime that occurs at a motel or hotel into a federal offense punishable in the federal courts. Such a construction of the statute would be extremely unreasonable. It would open up whole new realms for federal prosecution. It could lead to searches where the agents of the federal government know only that a state crime is being committed but have the hope that a search would turn up sufficient evidence to find that a federal crime is also being committed, thus, leading to grounds for federal prosecution. This is, of course, an absurd and unnecessary result.

As to the claim that the mere presence of the words "convention books" in the warrant supply the requisite "interstate" aspect, we feel this, too, is insufficient for much the same reason. After all, New Orleans is itself a great convention city and perhaps these girls were only looking at the "convention books" of up-coming conventions in New Orleans. The mere presence of convention books is not sufficient to establish the interstate activity envisioned by section 1952.

For these reasons, we find that the search warrant in this case was deficient for the affidavit upon which probable cause had to be based did not sufficiently allege facts to establish the probable cause that a federal crime was being committed. Since the fruits of this search were introduced into evidence against these defendants, we find that this case must be, and is

Reversed and remanded.

3. We note that the statute under consideration in *Heart of Atlanta*, Title II of the Civil Rights Act of 1964, 78 Stat. 241, 243, expressly uses the term "affect commerce" and that the Act contains a precise definition of that term.

RONEY, Circuit Judge (dissenting):

I would sustain the search warrant issued in this case on the ground that the statement in the Affidavit for Search Warrant that the property sought had been used "to promote and conduct prostitution activities through interstate travel" was sufficient, when considered with the other facts set forth in the Affidavit, to establish probable cause that a federal crime had been committed and that the address books, convention books, and financial records contained evidence of interstate criminal transactions.