**UNITED STATES of America, Plaintiff-Appellant,**

v.

**James Madison SEVIER, Defendant-Appellee.**

No. 75–2474.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1976.

Decided Aug. 10, 1976.

**600**

Eldon L. Webb, U. S. Atty., R. Burl McCoy, Lexington, Ky., Harry Ellis, Larry A. Morse, Bureau of Alcohol, Tobacco & Firearms, Fort Mitchell, Ky., for plaintiff-appellant.

Albert C. Hawes (Court-appointed CJA), Covington, Ky., for defendant-appellee.

Before PHILLIPS, Chief Judge, WEICK and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

This appeal presents the question whether an affidavit for a search warrant must allege specific facts sufficient to establish probable cause as to each and every element of the federal crime under investigation. The Government appeals from an order of the District Court granting the defendant's motion to suppress evidence, and dismissing an indictment charging James Madison Sevier, a convicted felon, with illegal possession of a firearm, in violation of 18 U.S.C. App. § 1202(a)(1). We reverse.

Special Agent Edgar R. Booher, of the Bureau of Alcohol, Tobacco and Firearms, secured from a United States Magistrate a warrant to search the residence of Sevier. The affidavit for the warrant, sworn to by Agent Booher, stated that Sevier was a convicted felon with a reputation among local law enforcement officials for dealing in stolen merchandise, including firearms; that he and his wife were observed by a confidential informant as they were carrying several armloads of articles from their station wagon to their home; that the articles appeared to be firearms, covered with a blanket; and that the butt ends of several long guns protruded from under the blanket.[1]

---

1. The affidavit of Agent Booher reads in pertinent part as follows:

The undersigned being duly sworn deposes and says:

That he has reason to believe that on the premises . . . in the Eastern District of Kentucky there is now being concealed certain property, namely firearms which are possessed in violation of Title 18, Section 1202(a)(1) U.S.C. and Title 18, Section 924(d) U.S.C.

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

In September 1973 James Madison Sevier was convicted of a felony in Campbell County, Kentucky Circuit Court under docket number 14222. James Madison Sevier has the reputation among local law enforcement officials as being a trafficer [sic] in stolen merchandise, to include firearms. On April 18, 1975 I received information form a confidental [sic] source who has furnished infor-

Four firearms were seized during the search of Sevier's residence and were shown in the inventory of the return of the execution of the warrant, as follows:

(1) 1 — Winchester, Model 94, 30/30 Caliber Rifle Serial Number 2165563.
(2) 1 — Savage, Model 220A, 12 Gauge Shotgun, Single Barrel, No Serial Number.
(3) 1 — Hi-Standard, Sport DeLuxe, 410 Gauge, Pump Shotgun, Serial Number 3063180.
· (4) 1 — Fabrique Nationale D-Armes DeGuerre Herstal Belgique Pistol, 9 MM, Serial Number either 174SO [?] or 164ZS [?], Loaded.

It did not appear that any of these firearms was manufactured in Kentucky. The firearm for the possession of which Sevier was indicted under Section 1202(a)(1) was a Hi-Standard .410 gauge shotgun; the indictment did not contain any reference to the other firearms found during the search of Sevier's residence.

The defendant's motion to suppress was argued to the Court orally by counsel for Sevier and for the Government. Defense counsel contended that the affidavit for the warrant was fatally defective because it stated in the grounds for the search and seizure,

[T]here is now being concealed certain property, namely firearms which are possessed in violation of Title 18, Section 1202(a)(1) U.S.C. and Title 18, Section 924(d) U.S.C.

It will be noted that the affidavit did not state that the statute was located in the Appendix of the Criminal Code. The District Court regarded this as a typographical error which was in no wise prejudicial to defendant and did not mislead him. The point has not been raised on appeal by Sevier.

The defendant further argued that the affidavit for the warrant was defective because it did not establish by specific facts that there was a nexus between the guns

and interstate commerce. In support of this proposition the defense cited to the Judge as authority only the state court decision of *State v. Bisaccia*, 131 N.J.Super. 270, 329 A.2d 570 (1974), which the Court considered of no help except for the persuasive value of its reasoning. The Court also stated that it had asked for but received no assistance from the Government so far as case law was concerned. It was of course the duty of the United States Attorney or his assistant to come into Court prepared, and to supply the Court with applicable authority in support of his argument. The Court ought not to be expected to try the case for the Government.

The Assistant Prosecutor did argue, however, that the Magistrate could take judicial notice of the fact that no manufacturers of firearms were located in the Commonwealth of Kentucky. As to this the Court stated:

[T]he Court would have to assume that the magistrate took judicial notice for the fact that there are no licensed manufacturers of long guns within the Eastern District of Kentucky or the Commonwealth of Kentucky.

The Court then asked the Assistant Prosecutor:

How do I determine that the United States Magistrate took judicial notice? Did he make a record of it somewhere?

The Prosecutor answered:

There's nothing in our file that reflects any record of it being made.

THE COURT: Then I cannot assume that it was made . . . I think the Court must limit its inquiry to the documents before it. (Tr. 14–15)

The Magistrate, like most Magistrates who grant search warrants on affidavits usually prepared in haste by laymen, granted the search warrant without writing an opinion setting forth his supporting reasons.

---

mation in the past in more than one instance which has resulted in criminal prosecution. This information was to the effect that during the early evening hours of April 18, 1975 James Madison Sevier and his wife arrived at their residence in Seviers' [sic] station wag-

on. Several armloads of articles were carried from that station wagon into the Sevier residence. These articles appeared to be firearms covered with a blanket and the butt ends of several long guns were visible protuding [sic] from under the blanket.

It is submitted that even Judges who issue search warrants do not ordinarily take the time to write an opinion setting forth their supporting reasons. If Judges would take the time to write such an opinion the material sought by the search might very well disappear before the warrant could be executed.

The Court further stated:

The legal technicalities are not the—not designed to trip up and dispose of search warrants on the grounds that they were unreasonably granted, but they must show on their face that there was probable cause to believe that a law of the United States had been violated and in this case, Appendix Section 1202(a)(1) of the United States Code, Title 18, requires the nexus with commerce and affecting commerce. (Tr. 17)

After suggesting that the Government appeal the Court's ruling, the Court stated:

[The] problem is whether or not in an affidavit for a search warrant probable cause for believing that a law of the United States has been violated, must be shown to the extent that all adjudicated facts as would be required by essential elements, not to the extent of proof in a court, but they have to touch *all* fact basis for that violation of law, or to put it another way, that a search warrant under 1202(a)(1) Appendix Section of Title 18 would have to show that the guns had some nexus with commerce. (Emphasis added) (Tr. 18)

Title 18 U.S.C. Appendix § 1202(a)(1) provides:

*§ 1202. Receipt, possession, or transportation of firearms—Persons liable; penalties for violations*

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,

. . .

. . . . . .

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,-000 or imprisoned for not more than two years, or both.

The Congressional findings and declarations for the statute are contained in Appendix § 1201 and provide as follows:

*§ 1201. Congressional findings and declaration*

The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons, veterans who are discharged under dishonorable conditions, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship, constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution.

The assassination and attempts to assassinate our Presidents and public officials, all with firearms, furnished ample support for the Congressional findings and declarations therefor. Furthermore, the statistical information furnished each year by the FBI showing the substantial increase of violent crimes, consisting of robbery, assault and murder committed with firearms, supports the Congressional finding that commerce is affected.

There was a divergence of opinion among the federal courts as to whether it was at all necessary to show any effect on commerce because of the Congressional findings and declarations. *See, e. g., United States v. Donofrio*, 450 F.2d 1054 (5th Cir. 1971), holding that it was not necessary, and contra District Court cases exemplified

by *United States v. Harbin*, 313 F.Supp. 50 (N.D.Ind.1970).

The Supreme Court set the issue at rest in *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), holding that the criminal statute was ambiguous and should be strictly construed; that a nexus between the firearm and effects on commerce is an element of the crime. *See also Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976).

■ All of this leads us to believe that in construing affidavits for search warrants we ought not to apply hypertechnical or rigorous standards which would frustrate the efforts of law enforcement officials and actually prevent any enforcement of the firearms statute.

■ The suppression of evidence involves the suppression of the truth and an investigation into a crime is impeded. *Cf. McCray v. Illinois*, 386 U.S. 300, 307, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

The standard we should use in construing affidavits for warrants does not require a prima facie showing of each and every element of the crime, but only a probability that a federal crime has been committed or is being committed. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

■ In judging probable cause Magistrates are not to be confined by niggardly limitations or by restrictions on the use of their own common sense. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1967).

■ Great deference, even in a doubtful case, must be given by courts to the determination of magistrates. *United States v. Ventresca*, 380 U.S. at 109, 85 S.Ct. 741.

In *Ventresca* the Court also held that some of the underlying facts must be stated which would lead a reasonable person to conclude that evidence that a federal crime has been committed will probably be found on the premises sought to be searched.

■ We have held time and again that the determination of a magistrate is conclusive and should not be set aside unless it is arbitrary. *United States v. Arms*, 392 F.2d 300, 302 (6th Cir. 1968); *United States v. Jordan*, 349 F.2d 107, 108 (6th Cir. 1965); *United States v. Haskins*, 345 F.2d 111, 113 (6th Cir. 1965); *United States v. Nicholson*, 303 F.2d 330, 338 (6th Cir.), *cert. denied*, 371 U.S. 823, 83 S.Ct. 43, 9 L.Ed.2d 63 (1962); *Evans v. United States*, 242 F.2d 534, 536 (6th Cir.), *cert. denied*, 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957).

The District Court in the present case made no finding that the determination of the Magistrate was arbitrary.

■ The affidavit for a warrant must be interpreted in a commonsense and realistic fashion. The elaborate specificity once required under common law pleadings is not required. *United States v. Ventresca*, *supra*, 380 U.S. at 108, 85 S.Ct. 741. The Magistrate has the same right as a Court to take judicial notice.

■ As we stated before, the affidavit of the Agent specifically stated that the guns were possessed in violation of the federal statute. The nexus with commerce must be shown in an indictment, and not in an affidavit for a search warrant. It is virtually impossible to show facts establishing the interstate movement of a particular weapon until that weapon is inspected. The search warrant enables the Government to obtain this proof prior to instituting a prosecution based on the possession of a particular weapon.

In the present case we have a fence who is dealing in stolen firearms. The return of the execution of the search warrant describes the firearms seized, one of which was made in Belgium, and none of them was manufactured in Kentucky. One of the weapons had the serial number obliterated. The Magistrate could use his common sense which would indicate to him that these guns probably had moved in interstate commerce.

Sevier's reliance on *United States v. Brouillette*, 478 F.2d 1171 (5th Cir. 1973), is misplaced, as that case did not involve firearms, but was a prosecution for conducting prostitution activities through interstate

travel, in violation of 18 U.S.C. § 1952, and was a decision by a divided court. We would not apply *Brouillette* to a firearms case, as the affidavit of the Special Agent of the FBI in that case specifically alleged that the concealed items for which the search was sought,

.   .   . have been used by Brouillette to promote and conduct prostitution activities through interstate travel in violation of Title 18 U.S.C. § 1952.

The Court held that this allegation was insufficient and that it should have been supported by some specific facts. This holding overlooks the very purpose of a search warrant.

In the present case the affidavit of Agent Booher established probable cause for a reasonable person to believe that guns could be found at Sevier's residence and that the possession of those guns constituted a violation of a federal law. This is all that the Fourth Amendment requires.

Other Circuits have dealt with this same issue with the same result, albeit on differing grounds. In *United States v. McShane*, 462 F.2d 5 (9th Cir. 1972), the Court declined to invalidate a search warrant on the ground that the supporting affidavit did not allege any link between the weapons and interstate commerce. The Court determined that one could reasonably suspect that the weapon had traveled in interstate commerce before reaching Hawaii. Similarly, in *United States v. Roberts*, 463 F.2d 372 (4th Cir. 1972), the Fourth Circuit rejected a challenge to the search warrant based on the fact that the supporting affidavit did not allege that the firearms in Roberts' possession had been involved in interstate commerce. The Court reasoned that the warrant comported with the law as it existed at the time of its issuance and therefore was valid.[2]

The order and judgment of the District Court granting Sevier's motion to suppress

evidence and dismissing the indictment is reversed, the determination made by the Magistrate in issuing the search warrant is affirmed, and this case is remanded to the District Court for trial.

---

2. Apparently the Court was referring to the fact that prior to the Supreme Court's decision in *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), there was no requirement in the Fourth Circuit that any connection with interstate commerce be demonstrated in certain prosecutions under 18 U.S.C. App. § 1202(a)(1). See *Bass, supra*, 404 U.S. at 338 n.3, 92 S.Ct. 515.