UNITED STATES of America, Plaintiff-Appellee,

v.

Adela Nancy DEL VALLE, Morry S. Fox, James A. Davis, II and Irving Curtis, Defendants-Appellants.

No. 77–5279.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1979.

Rehearing Denied Feb. 12, 1979.

E. David Rosen, Miami, Fla., for Del Valle and Fox.

Angus M. Stephens, Jr., Coral Gables, Fla., for Davis and Curtis.

Jack V. Eskenazi, U. S. Atty., Marsha L. Lyons, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, AINSWORTH and VANCE, Circuit Judges.

VANCE, Circuit Judge:

Appellants Adela Nancy Del Valle, Morry S. Fox, James A. Davis, II and Irving Curtis, together with Mary M. Hamilton, William H. "Shorty" Holton and Joe L. Moore, were indicted on August 27, 1976 on 105 counts. Counts 1 through 104 charged the defendants with using the mails in furtherance of a scheme to defraud various insurance carriers, accident victims and the Florida Bar Association, in violation of 18 U.S.C. § 1341.[1] Count 105 charged them

---

1. Section 1341 in its pertinent part provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . or procure for unlawful use any . . . obligation . . or other article, or anything represented to be or intimated or held out to be such counter- feit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the

with conspiracy to commit these substantive offenses in violation of 18 U.S.C. § 371.[2] A jury found each appellant guilty of all 105 counts.[3]

James Davis was an attorney whose practice consisted primarily of personal injury cases. He employed Mary Hamilton, as his secretary, Joe Moore, as office manager, and Irving Curtis and Shorty Holton, as "runners." Morry Fox was a practicing physician. He owned the Westchester Hospital in addition to his private clinic where Nancy Del Valle was his secretary.

The scheme which brought about the indictment of appellants involved the submission of fraudulent medical bills to insurance companies. Through the efforts of his "runners," Curtis, Holton and others, Davis procured accident victims as his clients and sent them to Fox for their medical treatment. Fox automatically hospitalized the victims in Westchester just long enough to reach the $1,000 threshold required by the Florida no-fault law[4] and then provided inflated, and in some cases, false, medical bills which Davis submitted to the insurance carriers. The proceeds from the insurance company drafts provided the revenue to the conspiracy, which according to one witness was over one million dollars a year. Del Valle, Moore and Hamilton were intimately involved in the day-to-day operation of the conspiracy.

place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing . . .
shall be guilty of an offense against the United States.

2. Section 371 in its pertinent part provides:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each . . .
shall be guilty of an offense against the United States.

3. Prior to trial, Hamilton entered a plea of guilty and thereafter testified for the government. Trial of Holton and Moore was severed for reasons not material to this appeal.

4. The Florida no-fault law, as it then existed, provided in pertinent part:

## I.

Appellants' first contention is that the trial court erred in denying their motions to suppress certain files and records seized in searches of the offices of Davis and Fox on April 13, 1976. Appellants attack the sufficiency of the affidavit on which the issuance of a search warrant was based. It is appellants' claim that the affidavit did not contain sufficient facts to establish that appellants' premises were being utilized to commit a federal crime and that without such a showing the affidavit was insufficient and the motion to suppress should have been granted. Appellants point to this court's statement of the applicable rule in *United States v. Brouillette,* 478 F.2d 1171, 1176 (5th Cir. 1973) where we stated:

The standard rule is that in determining whether probable cause exists for issuance of a search warrant it is not necessary to determine whether or not the offense has actually been committed but it is necessary to determine whether the affiant has reasonable grounds, at the time of making the affidavit and the issuance of the warrant, for believing that "the offense charged" was being or had been committed.

*Brouillette* cites another case which is supportive of appellants' position:

In *United States v. Birrell,* 242 F.Supp. 191 (S.D.N.Y.1965), federal agents sought

(2) In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle . . . or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the benefits which are payable for such injury under § 627.736(1)(a) or which would be payable but for any exclusion or deductible authorized by §§ 627.730–627.741 exceed one thousand dollars . . .
Florida Statutes, Annotated, Title 35, § 627.-737(2).
Although the Florida statute has been amended during the pendency of this case, the change has no effect on the issues before us.

and obtained a search warrant for certain property on the basis of an affidavit quite similar to the one here in question. The affidavit merely recited that the agent had reason to believe that certain records were being concealed at the premises to be searched, which records "have been used in committing a violation of Title 18, United States Code, Section 1341." The section involved is the basic mail fraud section. The court held the warrant plainly insufficient on its face because there was not a single fact stated in the affidavit tending to show that defendant Birrell used the mails in a scheme to defraud. Use of the mails was, of course, a necessary element in determining that there existed probable cause that fraud by mail had been committed.

*United States v. Brouillette, supra* at 1177. In reliance on this authority appellants claim that, here also, the information in the affidavit was insufficient to show use of the mails in furtherance of a scheme to defraud. We agree that without a sufficient inclusion of that essential element of the offense under 18 U.S.C. § 1341 the affidavit would not meet the requirements of *Brouillette.* We disagree, however, that the affidavit before us was insufficient under this standard.

■ The affidavit for search warrants was based on an investigation of eighty-six insurance claims. It factually described appellants' entire scheme at length and in detail. The affiants, both of whom were experienced in insurance fraud cases, stated that in their experience "demands against insurance companies and payment drafts by insurance companies are usually handled through the mail." The affidavit also showed that inspected claim files of insurance companies contained correspondence and bills from Davis, Fox and Westchester Hospital reflecting the senders' Miami, Florida addresses. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) holds that an affidavit for a

search warrant must show sufficient facts to establish probable cause when interpreted in a common-sense and realistic fashion. These statements, when interpreted in a common-sense manner, are sufficient to establish probable cause. It is common knowledge that insurance companies routinely transact business through the mails. A common-sense interpretation of the term "correspondence" and of the facts set out in the affidavit, in light of normal business practice and the experience of the affiants, would indicate use of the mails. A magistrate's determination of probable cause is conclusive in the absence of arbitrariness. *Bastida v. Henderson,* 487 F.2d 860 (5th Cir. 1973). We think that the affidavit in this case meets the standard set out in both *Ventresca* and *Brouillette* and that the magistrate's conclusion that probable cause had been established was not arbitrary.

## II.

The government introduced testimony that in an attempt to conceal the conspiracy Davis paid money to, coached and otherwise improperly attempted to influence witnesses who were to testify before the grand jury in May, 1976. Other appellants contend that evidence of Davis' statements and acts was inadmissible as to them because they were not made and done during the course of nor in furtherance of the conspiracy, as required by Fed.R.Evid. 801(d)(2)(E).[5] In addition, they advance related arguments that it was plain error for the trial court not to give a limiting instruction to the jury and that the court erred in denying their motions for severance. Fox advances an additional contention that as to him, the testimony was inadmissible because there was no independent proof connecting him with the conspiracy. That additional contention will be dealt with separately in the following section.

■ Under Rule 801(d)(2)(E) of the Federal Rules of Evidence a statement made by a coconspirator during the course and in

---

5.  Fed.R.Evid. 801(d)(2)(E) provides:

  A statement is not hearsay if . . . (t)he statement is offered against a party and is

  . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

furtherance of a conspiracy is not hearsay is offered against another party to the conspiracy. The admissibility of such statements is dependent on the government's proving the existence of the conspiracy and the involvement with the conspiracy of the party against whom the statement is offered.[6]

Appellants' claim of error goes to the ultimate question of admissibility, in connection with which they rely on *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); and *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). In *Krulewitch* the Supreme Court made clear that to be admissible, hearsay statements of coconspirators (as they were called[7]), must be made in furtherance of the conspiracy charged and the conspiracy must be an ongoing conspiracy when the statement is made. It rejected the government's contention that an implied conspiracy to conceal survives the main conspiracy and that statements made in furtherance of such continuing implied conspiracy are admissible.

*Lutwak* reaffirmed the *Krulewitch* rule and in so doing made the following statement which supports appellants' view of the law:

> Relevant declarations or admissions of a conspirator made in the absence of the coconspirator, and not in furtherance of the conspiracy, may be admissible in a trial for conspiracy as against the declarant to prove the *declarant's* participation therein. The court must be careful at the time of the admission and by its instructions to make it clear that the evidence is limited as against the declarant only. Therefore, when the trial court admits

against all of the conspirators a relevant declaration of one of the conspirators after the conspiracy has ended, without limiting it to the declarant, it violates the rule laid down in *Krulewitch*. Such declaration is inadmissible as to all but the declarant.

*Lutwak v. United States, supra* at 344 U.S. 618, 73 S.Ct. 489.

*Grunewald* presented a variation involving the same underlying principle but in connection with a statute of limitations question. The government contended that a continuing agreement to conceal could extend the duration of a conspiracy for statute of limitations purposes. The court rejected the contention on the authority of *Krulewitch* and *Lutwak*. Clarification of the rule as it applies to the present problem was provided in the opinion of the court by Justice Harlan:

> By no means does this mean that acts of concealment can never have significance in furthering a criminal conspiracy. But a vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime.

*Grunewald v. United States, supra* at 353 U.S. 405, 77 S.Ct. 974.

Correct application of these opinions was demonstrated with particular clarity in *United States v. Diez*, 515 F.2d 892 (5th Cir. 1975). The controlling question which was resolved in *Diez* was whether, "for purposes of admissibility, there was sufficient evidence that the statements in question were made during the course of the conspiracy." The same central question is raised by appellants here.

---

**6.** Treatment of such statements by the trial judge is presently under consideration by this court in the case of *United States v. James*, 576 F.2d 1121 (5th Cir. 1978), *motion for reh. en banc granted* (August 7, 1978). The record before us and our understanding of appellants' contentions, however, cause us to conclude the outcome of *James* will not control.

**7.** Before the *Federal Rules of Evidence* became effective this rule of law was properly referred to as the coconspirator exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(E) clearly states, in a technical departure from the former rule, that such statements are not hearsay. *See United States v. Brown*, 555 F.2d 407 (5th Cir. 1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). Some courts continue to cling to the old terminology.

■ The record before us reflects that Davis had been the focal point of a steady stream of investigatory activity. In addition to investigations by insurance companies and law enforcement agencies, Davis testified that about fifty complaints had been made to the Florida Bar Association and that the investigation "has been continuing now for about three years." The acts and statements in question were done and made by Davis prior to the May, 1976 grand jury. The indictment alleges and evidence shows that the conspiracy continued after that time. For example, Mary Hamilton testified that when she left the law firm in August, 1976, the conspiracy was still operating.

There are obvious distinctions between the conspiracy here and the one to which the *Krulewitch* holding was applied. The first distinction involves the sequence of events. We are dealing with statements made not after but during the conspiracy's operation. Second, the conspiracy here was not aimed at accomplishing a single objective with a precise moment of termination. This conspiracy had a continuing sequence of objectives. Third, the role of Davis in the conspiracy necessitated that he protect it from those investigative agencies which threatened its continuation. He was its shield. His attempts to influence witnesses were not acts of concealment related only to a past objective. They were parts of continuing activity that was essential to and therefore in furtherance of the survival of an ongoing operation. As this court recognized in *United States v. Diez, supra,* concealment is sometimes a necessary part of a conspiracy, so that statements made solely to aid the concealment are in fact made during and in furtherance of the charged conspiracy.

On the other hand, in the present case the central aim of the conspiracy was to deceive officials of the Internal Revenue Service, thereby inducing them to accept fraudulent tax returns as truthful and accurate. In light of the substantial possibility that the returns would be audited and investigated, the filing of the returns did not fully accomplish the purpose of the main conspiracy, which by its very nature, called for concealment.[7]

[7] The conspiracy alleged in this case is similar to the Supreme Court's examples, in *Grunewald, supra,* of crimes that inherently involve concealment.

> Kidnapers in hiding, waiting for ransom, commit acts of concealment in furtherance of the objectives of the conspiracy itself, just as repainting a stolen car would be in furtherance of a conspiracy to steal; *in both cases the successful accomplishment of the crime necessitates concealment.*

353 U.S. at 405, 77 S.Ct. at 974 (emphasis added).

*United States v. Diez, supra* at 897. We conclude that the challenged testimony comes within the operation of this rule.

This resolution of the central question also disposes of the two related questions raised by appellants other than Davis. The contentions with respect to severance and to additional cautionary instructions as referred to in *Lutwak, supra,* are based on the premise that the Davis statements were admissible only against Davis. We have concluded that under Rule 801(d)(2)(E) they were admissible against all members of the conspiracy.

### III.

■ Curtis and Fox question the sufficiency of the evidence. In considering the issue, we must view the record in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We conclude that the evidence is not only sufficient to sustain the convictions of each appellant, it is overwhelming.

### IV.

■ Two former secretaries in the Davis office, Mary Hamilton and Jeanette Faes, testified as witnesses for the government. Faes had given prior testimony before the grand jury. Hamilton had furnished the government with several typed statements. The government provided defendants with relevant portions of the Faes transcript and the Hamilton statements, but excised other portions. The trial judge

followed the procedure set out in 18 U.S.C. § 3500(c),[8] conducted an *in camera* inspection of the material, and required that defendants be furnished additional portions of the Hamilton statements. Under the Jencks Act determining the producibility of statements is primarily the duty of the trial judge, whose ruling will be sustained unless clearly erroneous. *United States v. Blackburn*, 446 F.2d 1089 (5th Cir. 1971), *cert. denied*, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). In response to appellants' implorations we have inspected both the furnished and the excised portions of the Jencks material and find no basis for reversal.

AFFIRMED.

---

**8.** Title 18 U.S.C. § 3500(c) provides:

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. . . .