**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald Ivan ESACOVE, Defendant–
Appellant.**

**No. 90–2474
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1991.

---

Travis W. Lewis, Sr., (court-appointed), Lewis, Allen & Lewis, Houston, Tex., for defendant-appellant.

Thomas M. Gannon, Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., Ronald G. Woods, U.S. Atty., Paula C. Offenhauser, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In February 1990, a Texas jury convicted Donald Ivan Esacove of two counts of mail fraud (18 U.S.C. § 1341) and six counts of money laundering (18 U.S.C. § 1956(a)). Esacove now appeals these convictions, assigning as error the admission of a coconspirator's out-of-court statements. Finding the introduction of these statements consistent with the Federal Rules of Evidence as well as the Confrontation Clause of the United States Constitution, we affirm.

I

Esacove's troubles are intimately wrapped up with the criminal escapades of Nicholas Bachynsky, a Houston physician and his longtime employer. To say that Bachynsky had a penchant for fraud is a prize-winning understatement. He established a nationwide network of weight loss and smoking cessation clinics that, through hordes of unnecessary tests and false claims, bilked over fifteen million dollars from patients and their insurers. So that he might pocket further insurance proceeds, Bachynsky directed an employee, Ronald Day, to arrange for the "theft" of his (that is, Bachynsky's) Mercedes–Benz. In a similar scheme, he ordered his antique store, "Carlo Ashton Antiques," burglarized and then filed a vastly inflated claim for the purloined merchandise. And whenever one of Bachynsky's corporations—he controlled several—neared the end of its fiscal year, he would shunt money from that corporation to one of his others in order to shelter, illegally, earnings from taxation. Additional Bachynsky exploits—in some of which the FBI actively participated, thanks to Day's cooperation—are recounted in *United States v. Bachynsky*, 934 F.2d 1349 (5th Cir.1991) (*en banc*).

The racket relevant here stems from Bachynsky's entry into bankruptcy on April 14, 1987. In the bankruptcy petition and accompanying schedules, Bachynsky made no mention of many of his assets, including several of his corporate interests. To maintain this ruse, and to hide other prepetition assets from the bankruptcy court's watchful eye, Bachynsky and Esacove laundered checks that were payable to Bachynsky through a checking account that Esacove had opened for his son, Benjamin. Over the course of some two years, a host of checks from an array of sources were laundered through this so-called "Benjie account."

In September 1988, a federal grand jury began investigating Bachynsky's financial affairs. On October 1 of that same year, Day, by then an FBI informant, wore a recording device into a meeting with Bachynsky, during which the latter explained, in detail, his and Esacove's use of the Benjie account and fretted over a way to rationalize such use to the grand jury. Any incriminating particulars Bachynsky neglected to bring up in the October 1 meeting were brought up—and recorded—during an October 2 gathering of Bachynsky, Day, and Bachynsky's girlfriend, where again Bachynsky sought advice on how to explain away the laundered funds.

At trial, Esacove objected to the introduction of Bachynsky's recorded statements, arguing that they were inadmissible hearsay and, further, that their introduction would violate his Sixth Amendment right of confrontation. The district court rejected both arguments, deeming the statements admissible as non-hearsay under *Fed.R.Evid.* 801(d)(2)(E).

II

In his inartfully drafted brief, Esacove poses the same two challenges to the introduction of Bachynsky's recorded statements. We address these in turn.

A

Initially, Esacove insists that the district court erred in ruling that the Bachynsky statements were admissible under

Rule 801(d)(2)(E).[1] To underpin this contention, Esacove proffers three discrete arguments: first, that the money laundering conspiracy ended when Bachynsky learned he was under investigation, and that therefore the taped utterances were not made "during the course ... of the conspiracy"; second, that Bachynsky's statements were made "in furtherance of" a *different* conspiracy—one to conceal the money laundering from the grand jury—and that Esacove played no part in this second conspiracy; and third, that the statements merely recounted past events and thus were not made "in furtherance of" any conspiracy.

These arguments leave us unconvinced. Esacove's first claim is but the baldest assertion: He points to nothing in the record to suggest that, when apprised of the grand jury inquiry, Bachynsky drew the laundering conspiracy to a close. Accordingly, we refuse to label as clearly erroneous the district court's determination that as of October 2, 1988, the conspiracy had yet to end. *See United States v. Winship*, 724 F.2d 1116, 1122 (5th Cir.1984); *United States v. Ackal*, 706 F.2d 523, 531 (5th Cir.1983).

The second argument founders on the artificial distinction Esacove draws between his conspiracy to launder and a supposedly separate conspiracy to conceal the laundering. Although a completed conspiracy does not automatically give rise to an "implied" conspiracy to conceal, *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), "concealment is sometimes a necessary part of a conspiracy, so that statements made solely to aid the concealment are in fact made during and in furtherance of the ... [original] conspiracy." *United States v. Del Valle*, 587 F.2d 699, 704 (5th Cir.1979). This is such a case. Because "the role of [Bachynsky] in the conspiracy necessitated that he protect it from those investigative agencies which threatened its continuation," *Del Valle*, 587 F.2d at 704, his statements to Day were, on this ground at least, properly admitted. *See also United States v. Diez*, 515 F.2d 892, 898 (5th Cir.1975) (coconspirator statement aimed at deflecting inquiry from tax evasion scheme held admissible under Rule 801(d)(2)(E) because scheme "by its very nature called for concealment").

As for Esacove's third argument—that many of Bachynsky's statements to Day were retrospective and thus not in furtherance of the conspiracy—Bachynsky indeed explained at length how he and Esacove had used the Benjie account to conceal earnings from the bankruptcy court. Those backward-looking statements, however, were nevertheless offered to promote the conspiracy: Only by explaining what he and Esacove had done could Bachynsky have expected advice from Day on how better to blunt the grand jury probe. *See United States v. Tille*, 729 F.2d 615, 620 (9th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). The instant case, therefore, is readily distinguishable from cases like *United States v. Phillips*, 664 F.2d 971, 1027 (5th Cir.1981), where a coconspirator's retrospective statement that did nothing to aid the conspiracy was on appeal held inadmissible.

### B

█ As his second challenge, Esacove avers that the introduction of Bachynsky's taped statements violated his constitutionally guaranteed right of confrontation. In presenting this challenge, however, Esacove relies on musty caselaw since overturned by *United States v. Inadi*, 475 U.S. 387, 400, 106 S.Ct. 1121, 1128–29, 89 L.Ed.2d 390 (1986) and *Bourjaily v. United States*, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987), two holdings that preclude confrontation clause attacks grounded upon statements admissible un-

---

1. The text of Rule 801(d)(2)(E) follows:

   Rule 801. Definitions
   (d) Statements which are not hearsay. A statement is not hearsay if—

   (2) Admission by party-opponent. The statement is offered against a party and is (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

der Rule 801(d)(2)(E). We therefore reject this argument as well.

### III

For the foregoing reasons, the judgment of the district court is

AFFIRMED.