791 F.2d 935
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
MICHAEL L. REEVES, Defendant-Appellant.
 85-3216
 United States Court of Appeals, Sixth Circuit.
 4/28/86
 
 AFFIRMED
 N.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: MILBURN and RYAN, Circuit Judges and BERTELSMAN, District Judge
 PER CURIAM.
 
 
 1
 Defendant Michael Reeves appeals from the order of the district court denying his motion to suppress. He maintains that the search warrant issued and executed in this case was not supported by sufficient information upon which a judge could find the requisite probable cause. Reeves also asserts that the evidence seized under the warrant must be suppressed because federal agents at the scene of the search failed to secure a separate federal search warrant.
 
 I.
 
 2
 The application to the Ohio Common Pleas Court for the search warrant in this case was based upon the affidavit of Detective Daniel Kovein of the Akron Police Department. The investigation of the defendant began with a telephone call to FBI agent William White from an unnamed informant. This informant had previously given information to White which had led to one arrest, and had provided other reliable information which had been corroborated by the FBI. The informant stated that defendant and a Robert Vanherbert were dealing in cocaine. This same informant told his federal parole officer, James Pertz, that the defendant had leased, and was driving a gold Lincoln Mark VII with Ohio license plate number TDL742, and would be leaving Akron on Monday, October 29, 1984 and traveling to Terre Haute, Indiana with Lisa Turner. There, they would meet Jim Westlake and receive a substantial amount of cocaine for transport back to Akron. Pertz relayed this information to Kovein, and told him that defendant and Westlake had served time together in prison in Terre Haute.
 
 
 3
 Agent White contacted Detective Kovein on October 26, 1984, and advised him of the information he had received. Kovein and contact with another informant, who had proved reliable in the past, who told Kovein that Robert Vanherbert sold cocaine.
 
 
 4
 On October 30, 1984, Kovein received another call from Agent White, who stated that he spoke with FBI Agent Marty Riggin in Terre Haute, and that Riggin had information that Reeves had recently been in Terre Haute and had obtained cocaine from Westlake. Later that day, Kovein received another telephone call from White, stating that he had received a telephone call from Agent Riggin who told him that Special Agent Tom Bowe of the Secret Service had observed the gold Lincoln, a white male, a white female, and a white male believed to be Westlake standing in front of Westlake's home in Terre Haute. The affidavit states that these individuals were seen at approximately 4:35 p.m. on August 30, 1984. Agent Bowe followed the vehicle, Indiana State Police kept in radio contract, and the Ohio State Patrol were alerted to keep watch for the vehicle.
 
 
 5
 Judge James Murphy of the Summit County Court of Common Pleas issued the search warrant late on the evening of October 30, 1984, authorizing a nighttime search of a 1984 Lincoln Continental belonging to Reeves, and permitting the Akron Police Department to stop and search the vehicle for cocaine. The Akron Police stopped defendant's car at approximately midnight on October 30, 1984, on I-76, within Akron city limits. FBI Agent White and Secret Service Agents Kalias, Young, and Tracey were present on the scene. The Akron Police executed the search, and seized $10,270 in counterfeit Federal Reserve Notes. Defendant and Lisa Turner were arrested on charges of possession of criminal tools. Defendant was subsequently charged with possession or concealment of the counterfeit notes, a federal offense. No drugs were found in the search, and the state charges relating to possession of criminal tools were eventually dropped.
 
 II.
 
 6
 Defendant's first claim is that Detective Kovein's affidavit provided insufficient facts to allow the issuing judge to make a probable cause determination. The criteria for assessing probable cause have been subject to recent revision. The Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983), held that the previously applied tests of Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), requiring a two-pronged inquiry into the veracity of an informant and the basis of his knowledge, are now replaced by an inquiry into the totality of the circumstances described in the supporting affidavit. In United States v. Algie, 721 F.2d 1039, 1041 (6th Cir. 1983), this Court interpreted the requirements of Gates:
 
 
 7
 Probable cause to conduct a search exists when the facts and circumstances indicate a 'fair probability' that evidence of a crime will be located on the premises of the proposed search.
 
 
 8
 The magistrate is to make a practical, common sense decision, assessing all the circumstances set forth in the affidavit. United States v. Ventresca, 380 U.S. 102 (1965). The magistrate's decision should be given great deference, and only disturbed if he acted arbitrarily. United States v. Sevier, 539 F.2d 599, 603 (6th Cir. 1976). The standard of review requires only that the magistrate have a substantial basis for concluding that a search would uncover evidence of wrongdoing. Gates, 462 U.S. at 238.
 
 
 9
 A comparison of the facts of this case to those in Gates suggests that Gates, in which the warrant was held to be validly issued, affords no comfort to appellant in this case. In Gates, the police received an anonymous letter stating that the defendants were drug dealers, and that they would be making a trip to Florida on a certain date to buy drugs. The letter did not state the basis of the informant's knowledge, and, as an anonymous tip, afforded no means to ascertain the informant's veracity. Police corroborated the tip through observation of the defendants' behavior, but did not obtain any independent incriminating information such as contact with a drug dealer. Applying the Aguilar-Spinelli standard requiring a showing of the informant's veracity and the basis of his knowledge, the Illinois Supreme Court held that no showing of probable cause was made. The U.S. Supreme Court reversed, supplanting the Aguilar-Spinelli test with an approach that allows the magistrate to view the totality of the circumstances with which he is presented.
 
 
 10
 Here, the issuing judge was supplied with a more detailed basis on which to assess probable cause than was presented to the magistrate in Gates. The affiant was a knowledgeable police officer with twelve years' experience, eight of those years as a narcotics detective. He received information about the defendant's criminal activity from informants whose veracity is supported by their credibility in previous cases, although no basis of knowledge was supplied. The affidavit was further supported by corroborating detail supplied by other police officers who verified the lease of the car, observed the car in its movements between Terre Haute and Akron, identified the defendant's associates as known to be dealing in drugs and counterfeit money, and established that there were previous contacts between the defendant and those associates.
 
 
 11
 Defendant's argument that the information from the unidentified informants did not meet the Aguilar-Spinelli two-pronged test is inappropriate. While veracity and basis of knowledge are still relevant, Gates expressly supplanted the two-pronged test with a review of the 'totality of the circumstances.' Here, the totality of the circumstances provided ample basis to establish probable cause.
 
 III.
 
 12
 Defendant claims that the district court should have allowed him to challenge the truthfulness of the factual statements made in the affidavit, following Franks v. Delaware, 438 U.S. 154 (1978). In Franks, the Court stated:
 
 
 13
 [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.
 
 
 14
 438 U.S. at 155-156.
 
 
 15
 Defendant maintains that there are numerous false statements in the affidavit, although he does not specify them in his Franks challenge. A review of the affidavit shows that the factual misstatements therein work primarily against the government and not in its favor, suggesting that the government's affiant did not 'knowingly and intentionally' falsify the affidavit. Paragraph nine of the affidavit states that Agent Bowe observed a white male and a white female standing in front of Westlake's house on August 30, 1984. Mr. Reeves and his companion are both black, and the context of the statement in the affidavit suggests that the affiant probably meant the observation took place on October 30, rather than on August 30. If these are errors, they hurt the government in its attempt to establish probable cause, and suggest that they were not intentional.
 
 
 16
 Defendant asserts that the statements that he would be picking up a substantial quantity of cocaine were clearly false, for none was found in the search of his car. But Reeves has not met the threshhold requirement of Franks needed to bring this challenge.
 
 
 17
 There must be allegations of deliberate falsehood or of reckless disregard of the truth, and those allegations must be accompanied by an offer of proof.
 
 
 18
 .............................................................
 
 
 19
 ...................
 
 
 20
 * * *
 
 
 21
 The deliberate falsity whose impeachment is permitted is only that of the affiant, not of any government informant.
 
 
 22
 438 U.S. at 171. Here, the defendant has presented no indication of deliberate falsehood on the part of the affiant. Therefore, the district court properly denied him a hearing.
 
 IV.
 
 23
 Defendant's final challenge is based on United States v. Sanchez, 509 F.2d 886 (6th Cir. 1975). He claims that there were two separate searches carried out on his automobile: one for drugs, conducted by the Akron police, and a second for counterfeit money, conducted by federal authorities. Since the federal officials did not attempt to obtain a warrant, defendant claims that their search was unauthorized, and the evidence should be suppressed.
 
 
 24
 This case is readily distinguishable from Sanchez. In Sanchez, Toledo police officer Mullin received information from an informant that he had seen heroin in the home of the defendant. Shortly after the officer obtained a warrant, he received a second call from the informant advising him that there were explosives at the same residence. of the explosives, and requested agent of the Alcohol, Tbacco, and Firearms Bureau, advised him of the explosives, and requested that he accompany him on the search. The federal agent did not obtain a second warrant to search for the explosives, although two hours elapsed before the search began. The court found that, the federal agent, despite having probable cause to believe that the defendant was in possession of contraband, and having the opportunity to obtain a warrant, violated the defendant's fourth amendment rights when he entered the defendant's home to conduct a warrantless separate search for explosives.
 
 
 25
 In order to find a fourth amendment violation, there must be some conduct on the part of the federal officers which constitutes an unreasonable search. Here, unlike Sanchez, the defendant points to no conduct that constitutes a search by the federal agents. The federal officers were present at the scene of the search and they played an integral part in the earlier investigation of the defendant, but they made no physical search of the defendant's vehicle. Since the counterfeit money was found in the course of the Akron police officers' legal search, there was no violation of defendant's fourth amendment rights when the officers' gave the contraband to the federal agents to confirm that it was counterfeit.
 
 
 26
 Accordingly, the judgment of the district court is affirmed.
 
 
 27
 ---------------
 
 
 
 * Judge William O. Bertelsman of the Eastern District of Kentucky sitting by designation.