LIPEZ, Circuit Judge,
dissenting in part.
The relationship between the concealment at issue in Upton’s conspiracy to commit money laundering and the concealment associated with his subsequent tax crimes is complex. The majority misapplies the relevant legal principles and, consequently, wrongly concludes that Upton’s failure to file a 1999 tax return was conduct within the scope of the money laun *17 dering conspiracy. In so doing, the majority embraces the government’s misguided attempt to remedy a statute of limitations problem by stretching the money laundering conspiracy beyond its justifiable limits to include Upton’s independent tax crime.
As the majority notes, the district court had dismissed before trial, on statute of limitations grounds, counts alleging money laundering, structuring, and conspiracy to engage in structuring. To salvage its money laundering conspiracy charge, the government sidestepped the Supreme Court’s teaching in Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), which — given the evidence presented — bars treating the tax fraud as conduct that furthered the conspiracy. If, as Grünewald requires, Upton’s tax evasion were eliminated from the scope of the conspiracy, no act in furtherance of the money laundering scheme would fall within the five-year statute of limitations period — and the jury’s guilty verdict on the conspiracy count could not stand. Because the majority’s decision to uphold the verdict conflicts with the governing precedent, I respectfully dissent.[14]
I.
In Grunewald, the Supreme Court drew a distinction between acts of concealment that furthered a charged conspiracy and subsequent acts of concealment done “for the purpose only of covering up after the crime.” Id. at 405, 77 S.Ct. 963. If the acts at issue were of the latter type — i.e., they did not further “the main criminal objectives of the conspiracy”' — -the concealment would not extend the duration of the conspiracy for purposes of the statute of limitations. Id.; see also United States v. Twitty, 72 F.3d 228, 233 (1st Cir.1995).
That distinction, the Court explained, was governed by “important considerations of policy” that hearkened back to prior cases “repeatedly warnfing] that we will view with disfavor attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions.” Grunewald, 353 U.S. at 404, 77 S.Ct. 963. Routinely viewing concealment efforts as part of a conspiracy would “wipe out the statute of limitations in conspiracy cases” and “result in a great widening of the scope of conspiracy prosecutions” because “every conspiracy will inevitably be followed by actions taken to cover the conspirators’ traces.” Grunewald, 353 U.S. at 402, 77 S.Ct. 963. Hence, the Court rejected “the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished.” Id. at 405, 77 S.Ct. 963.
Thus, if Upton’s tax evasion were conduct designed to cover up the money laundering conspiracy after the crime had been accomplished, rather than conduct undertaken to further the conspiracy’s central criminal purpose — laundering the stolen money — the money laundering conspiracy charge would be time-barred. Two possible theories, however, could support a conclusion that the failure to file a 1999 tax return furthered the charged conspiracy for purposes of the statute of limitations. First, if the evidence showed that the conspiracy embraced “an express original agreement among the conspirators to continue to act in concert in order to cover up” the crime, those acts of concealment *18 could “properly be regarded as in furtherance of the conspiracy.” Id. at 397, 404, 77 S.Ct. 963. In such instances, the cover — up would be not only foreseeable — as it would be with all crimes-but the explicit objective of “a subsidiary conspiracy to conceal.” Id. at 402, 77 S.Ct. 963.
Second, the tax fraud would be within the scope of the money laundering conspiracy if it could be viewed as an act of concealment done in furtherance of the main criminal objective of the conspiracy. In Grünewald, the defendants had fraudulently obtained “no prosecution” rulings from the Bureau of Internal Revenue on behalf of two companies seeking to avoid tax evasion charges, and the defendants later took steps to conceal their fraudulent activity. Id. at 395-96, 77 S.Ct. 963. The Supreme Court observed that the “no prosecution” rulings obtained in 1948 and 1949 had been the main objective of the conspiracy presented to the jury, and the subsequent efforts to conceal the irregularities — the conduct occurring within the statute of limitations period — could only have been for the purpose of avoiding apprehension, rather than to further the conspiracy’s already completed objective. Id. at 405-06, 77 S.Ct. 963. The Court acknowledged, however, that some acts of concealment are so closely linked in time and purpose to the accomplishment of the conspiracy that they are “in furtherance of the objectives of the conspiracy itself.” Id. at 405, 77 S.Ct. 963. The Court cited the concealment of kidnappers who hide while awaiting ransom and the repainting of a stolen car as instances in which “the successful accomplishment of the crime necessitates concealment.” Id.
The majority premises its analysis primarily on the second theory, concluding that “[n]ot filing returns was an ‘integral and self-evident part of the conspiracy,” but it asserts in a footnote that a reasonable jury could have concluded as well that Upton and Alberico had expressly agreed to engage in acts of concealment. I therefore consider both theories, looking first at the possibility of an express agreement to conceal.
II.
In asserting that the conspiracy in this case embraced the acts of concealment in the aftermath of the money laundering transactions, the majority emphasizes that, pursuant to the money laundering statute, the indictment charged Upton with conspiring “to conceal or disguise,” inter alia, the source and control of the stolen $900,000. See 18 U.S.C. § 1956(a)(1)(B).[15] The majority concludes that, because of this concealment language, “[t]he objective of the conspiracy was more than the specific monetary transactions of buying and selling 89 Iyanough Road,” but included the purpose “to obscure the illicit source of the funds and the conspirators’ continued control of the proceeds.” It reasons that, because the money laundering crime that was the objective of the conspiracy included a concealment element, the tax fraud was within the conspiracy’s scope.
The concealment element in the money laundering statute does not, however, bring within the scope of the money laun *19 dering conspiracy all conduct undertaken by the defendants to conceal the theft of the $900,000. The concealment element of section 1956(a)(1)(B) goes to the defendant’s state-of-mind when engaging in the prohibited transactions. The statute makes unlawful the conduct of a financial transaction “knowing that the transaction is designed in whole or in part ... to conceal or disguise” the origin or control of unlawfully obtained property. In other words, the jury in this case had to find that Upton conspired to commit money laundering transactions that were undertaken for the purpose of concealing the crime from which the laundered proceeds were derived (here, the theft of the $900,000). The statutory state-of-mind requirement does not, however, transform subsequent acts of concealment that do not involve financial transactions — whether designed to hide the money laundering activity or, like the money laundering itself, to hide the original theft — into conduct that is within the money laundering conspiracy.
Under Grünewald, efforts to conceal the money laundering conspiracy after the conspiracy’s primary aim (the deceptive financial transactions) has been achieved may be included within the scope of the conspiracy only if the evidence permits the jury to find that the defendants’ “original agreement” explicitly included a subsidiary objective to cover up their crime. See Grunewald, 353 U.S. at 404, 77 S.Ct. 963 (emphasis added). In other words, there must be some evidence of an agreement between the defendants, entered into before they commit the crime that is the object of the conspiracy, to continue to act jointly to cover up their unlawful activity. Only where there is such a pre-crime agreement will acts of covering up after the crime reveal “more than that the conspirators do not wish to be apprehended— a concomitant ... of every crime since Cain attempted to conceal the murder of
Abel from the Lord.” Id. at 406, 77 S.Ct. 963.
As in Grünewald, “[tjhere is not a shred of direct evidence in this record to show anything like an express original agreement among the conspirators to continue to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission.” Id. at 404, 77 S.Ct. 963. Nor does the fact that both Upton and Alberico failed to file 1999 tax returns reporting the gain earned from the stolen funds constitute indirect evidence of such an agreement to conceal. The Supreme Court in Grünewald unequivocally held that such post-crime evidence was insufficient to show the required pre-crime agreement:
[A] conspiracy to conceal is being implied [by the government] from elements which will be present in virtually every conspiracy case, that is, secrecy plus overt acts of concealment....
Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators.
Id. at 404, 402, 77 S.Ct. 963; see also SEC v. Papa, 555 F.3d 31, 36 (1st Cir.2009) (noting that “an agreement to conceal after the fact could be viewed as inherent in a conspiracy or any wrongful fraudulent scheme[,] but then all covert joint wrongdoing would be a permanently continuing offense ... an approach that the Supreme Court has rejected”); United States v. Goldberg, 105 F.3d 770, 773 (1st Cir.1997) (holding that “mere collateral effects of jointly agreed-to activity, even if generally foreseeable, are not mechanically to be treated as an object of the conspiracy”); id. at 774 (noting that, in the case of a *20 band of bank robbers, “[a]ll know that the agreed-upon robbery will generate ‘income’ that none of the robbers will report[, y]et it would be straining to describe interference with the IRS as a purpose or object of the conspiracy”). The inference of an original agreement to conceal is particularly unwarranted here given that, as the majority acknowledges, Upton and Al-berico did not consistently act in tandem following the money laundering. Alberico filed a false return for 1997 that omitted the stolen $900,000, while Upton filed his false return for that year in 2000.
In sum, “the essential missing element is a showing that the act [of concealment] was done in furtherance of a prior criminal agreement among the conspirators.” Grunewald, 353 U.S. at 404 n. 16, 77 S.Ct. 963. Because there is no evidence permitting the jury to find that Upton and Alberico entered into an “express original agreement” to cover up their money laundering activity, the tax fraud may not be considered within the scope of the conspiracy on that basis.
III.
Nor can the failure to file the 1999 tax return be viewed as an act of concealment done in furtherance of the main objective of the money laundering conspiracy. Although tax evasion is a foreseeable consequence of virtually every financial crime, Goldberg, 105 F.3d at 773, it is not inevitably within the scope of every conspiracy to commit such crimes. The question is whether, consistent with the second theory permitted by Grünewald, the jury could find that “the successful accomplishment of the crime necessitate^]” that act of concealment.[16] Id. at 405, 77 S.Ct. 963.
The majority states that, because the purpose of the money laundering conspiracy was to conceal the Queen theft, “additional acts of concealment that facilitate the central aim of the conspiracy are in furtherance of the conspiracy.” The majority asserts that the tax evasion meets this description: “[C]oncealing the existence or financial impact of the money laundering transactions[ ] is as much a part of the ongoing conspiracy to launder money as repainting the car is a part of a theft conspiracy.”
This case does not, however, involve an “ongoing conspiracy” that allegedly was intended to last beyond the set of transactions that laundered the stolen $900,000. Such a continuous conspiracy was described in United States v. Gardiner, 463 F.3d 445, 463 (6th Cir.2006), where the court discussed crimes with “ ‘no specific terminating event’ ” — such as a conspiracy to fix court cases or generalized loansharking activity — in which mid-conspiracy concealment is necessary for the scheme to continue. See id. (recognizing that, “[i]n conspiracies where a main objective has *21 not been attained or abandoned and concealment is essential to success of that objective, attempts to conceal the conspiracy are made in furtherance of the conspiracy”) (citation omitted); see also United States v. Esacove, 943 F.2d 3, 5 (5th Cir.1991) (noting that “ ‘concealment is sometimes a necessary part of a conspiracy’ ” to “ ‘protect it from those investigative agencies which threatened its continuation’” (quoting United States v. Del Valle, 587 F.2d 699, 704 (5th Cir.1979))). The money laundering conspiracy charged here, focused as it is on transactions designed to conceal a single crime, ended at a fixed point in time-when those specific transactions were completed. See Papa, 555 F.3d at 36 (“ ‘[TJhough the result of a conspiracy may be continuing, the conspiracy does not thereby become a continuing one.’ ” (quoting Fiswick v. United States, 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946))).
The flaw in the majority’s reasoning is further revealed by considering the Supreme Court’s illustrative crimes in Grü-newald. With its stolen car and kidnaping examples, the Supreme Court was describing acts of concealment that occur — as with “ongoing” conspiracies — in tandem with the criminal conduct that is the object of the charged conspiracy. In such cases, where the concealment occurs before the object of the conspiracy is completed (as with the kidnapers awaiting ransom) or coincident with its completion (as with the new paint job on a stolen car), the concealment is closely related in time to the commission of the crime that is the conspiracy’s goal. Such concealment directly facilitates the crime’s completion and, as such, it is properly viewed as part of the original criminal undertaking rather than as post-conspiracy cover-up.
Indeed, the Court in Grünewald extended its kidnaping example by noting that the concealment addressed by the government’s proof at trial in that case was “[m]ore closely analogous to ... conspiring kidnapers who cover up their traces after the main conspiracy is finally ended — i.e., after they have abandoned the kidnaped person and then take care to escape detection.” 353 U.S. at 405, 77 S.Ct. 963. By confining “necessary” acts of concealment to those that occur contemporaneously with the overt acts that comprise the substantive crime, the Supreme Court’s concern in Grünewald — that acts of concealment not be used to indefinitely extend the duration of a conspiracy — does not arise.
Here, too, the concealment relied upon by the government to extend the duration of the conspiracy is more akin to the cover-up conduct of kidnapers who have pocketed their ransom and abandoned their victim. There is no dispute that the overt acts that were the objective of the charged conspiracy — the financial transactions prohibited by section 1956(a)(1)(B) — had ended, at the latest, with the sale of the Iyanough Road property in January 1999.[17] The failure to file a tax return more than a year later — assuming the usual April 15th deadline — is materially different from either of the Supreme Court’s examples of within-the-conspiraey concealment. First, the tax evasion was remote in time from the targeted transactions. Second, the tax conduct did not facilitate those transactions. Upton and Alberico successfully changed the cash into cashiers’ checks and purchased the house in 1997, completing the money laundering *22 conduct that was the objective of the charged conspiracy. Their failure to file returns showing the gain from the house protected the scheme after the fact by concealing it, but that function is not enough to bring the tax evasion within the scope of the money laundering conspiracy.
Indeed, that tax evasion is precisely the sort of post-conspiracy concealment that the Court in Grünewald — as a matter of policy — deemed insufficient to extend the statute of limitations. By contrast, a car thiefs repainting of the car — and, even more so, the hiding of kidnapers waiting for ransom — is necessary for the successful accomplishment of the crime that is the object of the conspiracy.
The problem with the majority’s logic is demonstrable by applying it to a scenario in which Upton and Alberico had sold the Iyanough Road house ten years later, in 2009, and similarly failed to file tax returns reporting their gain. The majority’s analysis leads to the conclusion — impermissible under Grünewald — that the money laundering conspiracy would have continued for another decade, despite the lack of money laundering transactions throughout that period. The majority disclaims such a conclusion in its opinion in Alberico’s appeal, noting that “the failure to file [returns for 1999] was within a short time and thus likely to be part of the conspirators’ agreement.”
The majority offers no principled basis, however, for drawing a distinction between a failure to file a return disclosing gain earned in 1999 and a failure to file a return reporting that same gain earned at a later date. The concealment function performed by the tax evasion is the same in both instances, and I do not see how such concealment can be deemed an essential part of the money laundering conspiracy at the earlier time but not later.[18] Moreover, in both instances the objective of the money laundering conspiracy — the commission of the crime of money laundering-had already been completed. Hence, the timing of the tax evasion does not support the majority’s conclusion that it was within the scope of the original money laundering conspiracy. To the contrary, the tax conduct’s remoteness from the charged objective of the conspiracy — to launder the $900,000 by means of financial transactions — confirms that it was not necessary to the accomplishment of the conspiracy in the sense required by Grünewald.
IV.
The majority’s confusion undoubtedly stems in part from its failure to appreciate the critical difference between the conspiracy alleged here and the type of conspiracy charged in Grunewald and other cases on which the majority relies, including Goldberg and United States v. Mann, 161 F.3d 840, 859 (5th Cir.1998). Those cases *23 involved conspiracies brought under 18 U.S.C. § 371, which criminalizes any conspiracy “to defraud the United States, or any agency thereof in any manner or for any purpose.” 18 U.S.C. § 371. Such a conspiracy “can have multiple objects, and any agreed-upon object can be a purpose of the conspiracy and used to define its character.” Goldberg, 105 F.3d at 774 (citing Ingram v. United States, 360 U.S. 672, 679-80, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959)).
Thus, under section 371, a defendant may be charged and found guilty of conspiring to defraud the government by means of tax conduct whose purpose was to conceal earlier illicit activity that was charged as a separate object of the same conspiracy. In Mann, for example, the government alleged five separate objects of the single conspiracy charged under section 371 in the indictment’s first count, including misuse of bank funds and the filing of false income tax returns. Mann, 161 F.3d at 847-48. The court rejected the defendants’ Grünewald argument because “[t]he central aim of the conspiracy” — as alleged in the indictment — included a purpose to evade taxes. Mann, 161 F.3d at 859.
Grünewald also illustrates the potential breadth of conspiracies under section 371. Although the case was tried on the theory that the defendants’ conspiratorial objective was to obtain “no prosecution” rulings for certain taxpayers, the indictment embraced the theory that the conspiracy’s central object extended beyond those provisional rulings “to immunize the taxpayers completely from prosecution for tax evasion.” Grunewald, 353 U.S. at 408, 77 S.Ct. 963. The Supreme Court concluded that, under the limited theory presented to the jury, the acts of concealment following the “no prosecution” rulings could only be viewed as post-conspiracy cover-up to protect the defendants. Under the broader theory, however, those acts could be viewed as conduct in furtherance of the conspiracy to fully protect the taxpayers from tax liability. Id. at 409-411, 77 S.Ct. 963.
The Court remanded the ease for a new trial because the jury charge did not distinguish between concealment in order to achieve the central purpose of the more broadly stated conspiracy (immunization of the taxpayers from tax-evasion prosecution), and concealment intended solely to cover up a completed crime (obtaining the “no prosecution” rulings). Id. at 413-14, 77 S.Ct. 963. To find that the acts of concealment that took place within the limitations period were in furtherance of the conspiracy, the jury needed to find that “the basic aim of the conspiracy was not yet attained” at that time — a determination the jury was not asked to make. Id. at 414, 77 S.Ct. 963.
As far as we know, therefore, the present convictions were based on the impermissible theory ... that a subordinate agreement to conceal the conspiracy continued after the central aim of the conspiracy had been accomplished.... [T]he judge’s charge left it open for the jury to convict even though they found that the acts of concealment were motivated purely by the purpose of the conspirators to cover up their already accomplished crime. And this, we think, was fatal error.

Id.

The majority fails to recognize that the indictment here is not similarly elastic. The indictment charged a conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B), not a more general conspiracy under section 371 “to defraud the United States, or any agency thereof’ by concealing, through various unlawful actions, the theft of Queen’s mon *24 ey. Although the indictment’s conspiracy allegations included, under the heading “Manner and Means,” that “[i]t was part of the conspiracy that [defendants] attempted to conceal or disguise the ... source ... or control of the illegal cash proceeds by failing to file income tax returns ... for the tax year 1999,” the government’s description of a subsequent tax fraud that shared the same concealment objective of the money laundering transactions cannot turn the specific conspiracy alleged — to commit money laundering — into a general conspiracy to conceal funds.[19]
Unlike the section 371 conspiracy charged in Mann, which included a separate tax fraud objective, or the conspiracy charged in Grünewald, whose general purpose to defraud the United States could embrace acts of concealment subsequent to the “no prosecution” ruling, a conspiracy to commit money laundering — i.e., a conspiracy to conduct financial transactions— cannot, by its terms, include a “central criminal purpose” to conceal income from the IRS. Grunewald, 353 U.S. at 405, 77 S.Ct. 963. Put most simply, the tax evasion did not further the “central aim” of the conspiracy,' which was to conduct financial transactions in order to conceal the source of the $900,000. Hence, the tax evasion was not within the scope of the charged conspiracy. The conspiracy charge was therefore barred by the statute of limitations.
V.
The majority is correct, of course, that Upton’s failure to file the 1999 tax return bears some relationship to the money laundering conspiracy. As I have noted, both crimes share a purpose to cover up the theft from Queen, with the tax evasion presumably having the added purpose to cover up the money laundering. Both the facts and the law, however, preclude a finding by the jury that there was an express original subsidiary agreement among the conspirators to cover up their crime, or a finding that the failure to file the 1999 return was an act of concealment done in furtherance of the money laundering conspiracy within the meaning of Grü-newald. Thus, while Upton was charged and properly convicted of the separate crime of failing to file a tax return, the majority errs in treating that independent crime as a part of the money laundering conspiracy.
Because the conspiracy charge was time-barred, Upton’s conviction on Count 4 of the indictment should be reversed.

. My objections to the majority’s reasoning also apply to its decision in the separate appeal of Upton’s co-defendant, Alberico, who also challenged her conviction for conspiracy to commit money laundering on statute of limitations grounds.

. That provision states, in relevant part:
(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts ... such a financial transaction which in fact involves the proceeds of specified unlawful activity—
(B) knowing that the transaction is designed in whole or in part—
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.... shall be sentenced to a fíne ... or imprisonment....

. Count Four of the indictment alleged the following tax-related conduct by Upton as part of the money laundering conspiracy:
5. It was a part of the conspiracy that defendants George L. Upton and Lynn M. Alberico attempted to conceal or disguise the nature, location, source, ownership, or control of the illegal cash proceeds by failing to file income tax returns, or declare a capital gain from the sale of the commercial property, for the tax year 1999.
6. It was a part of the conspiracy that George L. Upton attempted to conceal or disguise the nature, location, source, ownership, or control of the illegal cash proceeds by filing a materially false federal income tax return in or about July 2000 that failed to declare the receipt of the illegal income or the rental income from the property in 1997.
The government argues that Upton's filing of a false return for 1997 also was an act in furtherance of the conspiracy, although the majority does not rely on that conduct. I would have the same objections to any such reliance as I do for Upton’s failure to file the 1999 return.

. Although Upton appears to presume that the money laundering transactions included the house sale, the list of transactions in the indictment concludes with the purchase of the house.

. Beyond highlighting the flaw in the majority’s reasoning, the hypothetical shows the problem in viewing the sale of the Iyanough Road house — as distinguished from its purchase — as part of the money laundering conspiracy. The laundering was accomplished by converting the cash to cashier's checks that were then converted into real estate, from which Upton and Alberico earned rent of $1,000 a month. As Upton points out, if the failure to report down-the-line profits from the laundered money (such as gain from the house sale) is held to be within the scope of the original money laundering conspiracy, the result would be an open-ended statute of limitations-the Supreme Court’s concern in Grunewald. See 353 U.S. at 402, 77 S.Ct. 963 ("Sanctioning the Government’s theory would for all practical purposes wipe out the statute of limitations in conspiracy cases see also United States v. Magluta, 418 F.3d 1166, 1180 (11th Cir.2005) (holding that purchases using laundered proceeds years after the payment that constituted the original laundering could not be considered part of the money laundering conspiracy).

. The indictment originally included a count under section 371 alleging a conspiracy to structure transactions for the purpose of evading federal currency reporting requirements. See 31 U.S.C. §§ 5324(a)(3), 5322. As noted earlier, the district court dismissed that count on the basis of the statute of limitations. See United States v. Upton, 339 F.Supp.2d 190, 196 (D.Mass.2004).